```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIMOTHY SIFFEL, et al.          :      CIVIL ACTION
                                :
          v.                    :
                                :
NFM, INC., et al.               :      NO. 07-cv-05152-JF
```

<u>MEMORANDUM</u>

Fullam, Sr. J.                                    June 23, 2009

In this case, Plaintiffs, a husband and wife, have sued their mortgage broker and lender, asserting various claims that stem from their receipt of a sub-prime loan in 2006. Defendants have moved for summary judgment, and for the following reasons, I will grant their motions.

In November 2006, Plaintiffs contacted Defendant NFM, a mortgage broker, to refinance their home mortgage. NFM's employee, Greg Peters, assisted Plaintiffs in obtaining a loan from Defendant Countrywide. Plaintiffs chose an adjustable-rate, interest-only loan, which featured a set interest rate during the first two years and a variable rate thereafter. The monthly payments under this arrangement were less than those under Plaintiffs' existing mortgage, and Plaintiffs expected to avoid the risk of a variable interest rate by refinancing *again* within two years.

With this additional refinance in mind, Plaintiffs requested that NFM arrange a loan without a prepayment penalty, and

according to Plaintiffs, Mr. Peters assured them that the loan would not contain such a provision. At closing, however, Plaintiffs discovered that the loan agreement did, in fact, contain a prepayment penalty. Plaintiffs nevertheless signed the loan because they knew that they could rescind within three days. After closing, they contacted Mr. Peters, who allegedly promised to waive the penalty if Plaintiffs conducted their next refinance through NFM. On the basis of that statement, Plaintiffs did not rescind their mortgage, and they began making their monthly payments.

Soon after the closing, the parties' relationship soured and Plaintiffs sued NFM, Mr. Peters, and Countrywide Home Loans. In response to Defendants' motions for summary judgment, Plaintiffs have conceded roughly half of their claims, and I will dismiss those counts. At present, Plaintiffs allege two types of wrongdoing: NFM's misrepresentations about the prepayment penalty, and Countrywide's violations of federal lending statutes.

Plaintiffs allege that NFM and Mr. Peters made actionable misrepresentations about the existence and effect of the loan's prepayment penalty, and they pursue common law claims of negligent misrepresentation, fraudulent misrepresentation, and negligence. All of these claims require proof of justifiable reliance (or causation), as well as damages. Plaintiffs also

assert that NFM and Mr. Peters violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), which creates a private action for fraudulent or deceptive conduct in lending.  Like Plaintiffs' common law claims, the UTPCPL also requires proof of justifiable reliance, and damages.  <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217, 223-24 (3d Cir. 2008).

Plaintiffs' misrepresentation claims suffer from several deficiencies, but they ultimately fail because Plaintiffs have offered no evidence that the prepayment penalty caused them any damages.  Plaintiffs never incurred the prepayment penalty, nor does the record reflect that they could have.  Plaintiffs may have made a few "inquiries," but they did not attempt to refinance again, and they testified that the economic downturn likely made refinancing impossible.  Without any evidence to show that Plaintiffs could have refinanced during the first two years of their loan, they cannot prove that they were harmed by the prepayment penalty or Mr. Peters's misrepresentations about it.

Plaintiffs also seek emotional distress damages, but the record does not allow such an award.  To the extent that Plaintiffs assert negligent infliction of emotional distress, they must show that NFM owed them a pre-existing duty of care, and that they suffered a physical injury, harm, or illness as a result of the misrepresentation.  <u>See</u> <u>Corbett v. Morgenstern</u>, 934 F.Supp. 680, 682-84 (E.D. Pa. 1996) (Padova, J.).  Here,

Plaintiffs have not identified any pre-existing duty of care, nor have they sustained any physical harm.

As against Countrywide, Plaintiffs attempt to establish vicarious liability for the misrepresentations of NFM and Mr. Peters, but because those underlying claims fail as a matter of law, Plaintiffs cannot succeed.[1]  In addition, Plaintiffs assert that Countrywide is liable for violations of the Truth in Lending Act and the Equal Credit Opportunity Act.

Under the Truth in Lending Act (TILA), a consumer may rescind a home mortgage within three days of taking the loan, and lenders must provide each borrower with two written notices of the right to rescind.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1).  The three-day rescission period begins upon receipt of the notices, but if a lender fails to provide them, then a borrower may rescind up to three years after taking the loan.  12 C.F.R. § 226.23(a)(3).  If a borrower signs a document acknowledging receipt of the notices, then TILA establishes a rebuttable presumption that the lender delivered them.  15 U.S.C. § 1635(c).  Here, Plaintiffs allege that Countrywide violated

---

[1] Plaintiffs also vaguely refer to "confusing and deceptive" loan appendices that purportedly give rise to a separate UTPCPL claim against Countrywide.  These allegations are ambiguous, but in any event, Plaintiffs have not identified any reliance on those documents or damages that resulted.  To the extent that Plaintiffs assert a separate UTPCPL claim against Countrywide, it must be dismissed.

TILA's notice requirement, and on that basis, they seek to rescind.

Countrywide has established a rebuttable presumption of TILA compliance because Plaintiffs signed a "Notice of Right to Cancel," acknowledging that they each received two copies of the necessary TILA rescission-notices.  In rebuttal, Plaintiffs offer only an argument that Countrywide has "admitted" a TILA violation because it failed to attach four signed TILA notices to its motion for summary judgment.  The language of TILA, however, does not require that a borrower sign any of the forms, and the record does not contain any evidence that Plaintiffs received fewer than two notices apiece.  Countrywide need not prove the absence of a TILA violation, and Plaintiffs have offered no evidence to rebut the presumption that they received the necessary notices.  Their TILA claim therefore fails.

Plaintiffs also seek various damages for an alleged violation of the Equal Credit Opportunity Act (ECOA), which requires lenders to respond to credit applications within 30 days of receipt.  ECOA provides for three possible responses: approval, counteroffer, or adverse action.  A counteroffer is defined as an offer to extend credit "in a different amount, or on other terms" than the requested ones.   12 C.F.R. § 202.2(c)(1)(i).  A lender must provide certain information with a notice of adverse action, but there is no similar requirement for

a notice of counteroffer.  <u>Ricciardi v. Ameriquest Mortgage Co.</u>, 164 Fed.Appx. 221, 224-25 (3d Cir. 2006).

   Plaintiffs originally applied for a $265,000 loan, but Countrywide would only provide $258,400 due the appraised value of their home.  Countrywide's response, including the prepayment penalty, can only be viewed as an offer to extend credit on terms other than those that Plaintiffs requested.  Despite Plaintiffs' insistence to the contrary, that response fits neatly with the definition of an ECOA counteroffer, not a rejection.

   At the very latest, Plaintiffs received clear notice of the counteroffer at the time of closing.  After the appraisal, Plaintiffs knew that their loan amount would be $258,400, and at the closing, they received both loan documents and an additional TILA form indicating the prepayment penalty.  When signing, Plaintiffs understood that the terms differed from their initial request, and they recognize that their ECOA claim is likely defeated by <u>Ricciardi</u>'s allowance of counteroffers at closing.  <u>See</u> <u>id.</u>  Although the case is not precedential, I decline to depart from its holding; Plaintiffs' ECOA claim therefore fails.

   In the absence of any other claim, Plaintiffs cannot recover for loss of consortium.  I will dismiss that count as well.

   In sum, I will grant Defendants' motions for summary judgment and dismiss all of Plaintiffs' claims.  An appropriate order will be entered.

                              BY THE COURT:

                              /s/ John P. Fullam
                              John P. Fullam, Sr. J.